616 So.2d 1192 (1993)
In the Interest of D.M., a minor child.
Nos. 92-2718, 92-2719.
District Court of Appeal of Florida, Fourth District.
April 21, 1993.
Steven L. Perry of Steven L. Perry, P.A., Palm City, for appellants-natural parents.
Pamela Wynn and Evdokia Sofos, West Palm Beach, for appellee-Dept. of Health and Rehabilitative Services.
T.C. Shafer and Jane L. Cornett of Wackeen, Cornett & Googe, P.A., Stuart, for appellee-Nancy Coppola, as Guardian Ad Litem.
PER CURIAM.
Appellants attack the constitutionality of sections 39.464(3) and (4), Florida Statutes (1991), upon the ground of vagueness. We affirm.
While the facial unconstitutionality argument was not presented by appellants to the trial court, their parental rights are a fundamental liberty. See Padgett v. Dep't of Health & Rehabilitative Services, 577 So.2d 565 (Fla. 1991). As such, the issue may be addressed for the first time on appeal. See Potts v. State, 526 So.2d 104 (Fla. 4th DCA), approved, 526 So.2d 63 (Fla. 1988).
Section 39.464, Florida Statutes (1991), provides in pertinent part:
39.464 Grounds for termination of parental rights.
The department, the guardian ad litem, or a licensed child-placing agency may petition for the termination of parental rights under any of the following circumstances:
... .

*1193 (3) SEVERE OR CONTINUING ABUSE OR NEGLECT.  The parent or parents have engaged in conduct towards the child or towards other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life or well-being of the child regardless of the provision of services. Provision of services is evidenced by having had services provided through a previous performance agreement, permanent placement plan, or offer of services in the nature of a case plan from a child welfare agency. A current performance agreement or permanent placement plan need not be offered to the parent or parents, and the petition may be filed at any time before a performance agreement or permanent placement plan has been accepted by the court.
(4) EGREGIOUS ABUSE.  The parent or parents have engaged in egregious conduct that endangers the life, health, or safety of the child or sibling, or the parents have had the opportunity and capability to prevent egregious conduct that threatened the life, health, or safety of the child or sibling and have knowingly failed to do so. A performance agreement or permanent placement plan need not be offered to the parent or parents, and the petition may be filed at any time before a performance agreement or permanent placement plan has been accepted by the court... . For the purposes of this subsection, "egregious abuse" means conduct of the parent or parents that is deplorable, flagrant, or outrageous by a normal standard of conduct. "Egregious abuse" may include an act or omission that occurred only once, but was of such intensity, magnitude, or severity as to endanger the life of the child.
Appellants contend that the legislature's use of such vague terms fails to support its intrusion into the private lives of the parents and unconstitutionally refers to a purely subjective standard of conduct.
We find appellants' constitutional attack to be without merit. In E.H. v. State, Dep't of Health & Rehabilitative Services, 443 So.2d 1083 (Fla. 3d DCA 1984), the court rejected the natural mother's argument that section 39.01(26), Florida Statutes (1981), under which her child was adjudicated dependent, was unconstitutional because it provided "a facially vague standard." The statute (renumbered as section 39.01(37), Fla. Stat. (1991)) provided in pertinent part that a child is considered neglected when a parent permitted a child to live in an environment that caused the child's "mental or emotional health ... to be in danger of being significantly impaired." In upholding the constitutionality of that section, the court reasoned as follows:
As the statute is clearly designed to protect children in need of care, and because circumstances warranting such protection arise in a variety of ways, the legislature was not required, as urged, to state explicitly all activities or actions by parents which could result in a finding of child neglect. The statute, we think, gives sufficient notice to parents of the type of activity they must avoid to preclude such a finding.
Id. at 1084.
We believe the court's reasoning in E.H. also applies here. Section 39.464 is as precise as it could be in order to protect the child's safety and, at the same time, allow for flexibility in determining the best interests of the child. It would be an impossible, if not futile, task to attempt to catalog the various situations in which a termination of parental rights would be justified. We note that our holding is in accord with decisions from other jurisdictions that have considered and rejected void-for-vagueness challenges to statutes utilizing similar language in setting forth the grounds for termination of parental rights. See Vance v. Lincoln County Dep't of Pub. Welfare, 582 So.2d 414 (Miss. 1991) (where there is a "substantial erosion of the relationship between parent and child"); In re Hanks, 553 A.2d 1171 (Del. 1989) (where the parent fails to "plan adequately for the child's needs"); Chandler v. Cochran, 247 Ga. 184, 275 S.E.2d 23 (where parent fails to "provide for the care and support of the child"), cert. denied, 454 U.S. 872, 102 S.Ct. 342, 70 L.Ed.2d 177 (1981); In re Male *1194 Child, 8 Haw. App. 66, 793 P.2d 669 (where parents are unable to provide "the care necessary for the well being of the child"), cert. denied, 71 Haw. 668, 833 P.2d 900 (1990); People v. D.A.K., 198 Colo. 11, 596 P.2d 747 (1979) (where parents had subjected the child to "mistreatment or abuse"), appeal dismissed, 444 U.S. 987, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979); D.F. v. State, 525 S.W.2d 933 (Tex. Ct. App. 1975) (where parents engaged in conduct "endangering the physical or emotional well-being of the child").
GLICKSTEIN, C.J., ANSTEAD, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.